Booth, Judge,
delivered the opinion of the court:
The plaintiff is the riparian owner of certain lands on the east bank of the Mississippi Fiver in Wilkinson County, Mississippi. In the course of time and high and low floods of this river there has been formed against the land of the plaintiff a batture or bar of sand and gravel upon which a variety of willows and grass’ and weeds thrive and multiply. During certain periods of the year, when the river itself reaches certain stages, this batture is dry and the sand and gravel available for commercial purposes. During other periods when the river is increased in volume and reaches certain stages this formation is completely submerged by water, it being conceded that the highest point above low water mark varies with the rise, and fall of the river. On September 9, 1915, there was a stage of twenty-one feet of *26 water over the highest part of this gravel bar. In 1915 Major W. G. Capíes, Corps of Engineers, U. S. Army, acting as a member of the Mississippi River Commission, proposed to an agent of the OAvner of the lands a tentative agreement for the dredging and removal of sand and gravel from this batture, in which, if any liability therefor attached, it was agreed that the plaintiff should receive pay therefor at the rate of three cents a cubic yard for gravel and one and one-half cents a cubic yard for sand. It is admitted by the defendant that from 1915 to 1921 there Avas taken from this batture 21,853 cubic yards of sand and graA'-'el, and the same Avas used by defendant in constructing certain devices to be used in bank protection work, i. e., Avork designed to prevent the erosion of the banks of the river. The plaintiff concedes that the purpose in taking and removing all of said sand and gravel was by the Mississippi River Commission in aid of and for the improvement of the navigation of the river. Fie insists, however, and upon this he predicates primarily his case, that the dredging and removal of the sand and gravel was not for the purpose of deepening the channel at that identical or any other point, for the bar or batture was not in its nature a hindrance or •obstruction to navigation, but was to be used in constructing artificial instrumentalities, approved devices, to be so placed and attached to the banks of the river at points distant from his lands, to avoid erosion of the' river banks and maintain its natural channel. The defendant, in taking' the sand and gravel, did take it for this precise purpose. All that was taken Avas used in this way. When the time arrived for payment the defendant declined to pay, and resisted the demands of the plaintiff on the ground that it Avas not liable therefor. There is no claim here under a legal contract. It is mutually agreed that the arrangement was purely and intentionally tentative, dependent upon reciprocal rights under the law.
The plaintiff supports in part his right to recover for the sand and gravel taken upon the well recognized and long approved doctrine that where the United States takes the land of a citizen, recognizing a want of title or right to the *27 land so taken in itself, there arises an implied contract to pay the owner therefor under the fifth amendment to the Constitution, even though taken for the improvement of navigation. United States v. Lynah, 188 U. S. 445. Plain-till asserts that under the laws of the State of Mississippi he was the owner of the soil to the middle of the stream, and that inasmuch as the natural accretion resulting in the formation of the batture attached to his land did not at the point of its existence interfere with navigation, the defendant was precluded from dredging and carrying it away to other and distant points to be used in making concrete blocks or other construction work to prevent the erosion of the river, wherever it was thought essential. Apparently it was assumed that the right existed to dredge the channel, and if in so doing the batture was destroyed in the interest of deepening the river, the plaintiff would be without a remedy. Emphasis is laid, and the case is differentiated from the above conceded right, upon the fact, stressed in the briefs, that the sand and gravel was removed and transported to a distant point and used in the construction of devices approved by the Commission. In other words, instead of purchasing or contracting with independent contractors to construct these various devices, the defendant decided to do the construction work itself, and took the plaintiff’s sand and gravel because it was available to construct the same. Quoting from plaintiff’s brief: “ When nothing is to be done on plaintiff’s property in aid of navigation, no channel to be deepened, no lighthouse to be built, dikes or other structures to be.erected or obstructions to be removed, then plaintiff contends that the Government is without right to disturb his possession and confiscate his property.” ’
This argument, in its final analysis, leaves plaintiff in an awkward situation. If the defendant’s officers in .doing what they did, acted without right, if they were acting without authority, the same was tortious, and we are without jurisdiction in the premises. Tempel v. United States, 248 U. S. 121. It is only when acting within the scope of their authority, and when so doing they intentionally in *28 vade another’s land under circumstances that will authorize the implication of a contract to pay therefor, that the defendant becomes liable under the decisions, so that under the agreed statement of facts it must appear that what was done, was with authority in the aid of navigation before the jurisdiction of this court attaches. The plaintiff, under the decisions, is put to the necessity of establishing, first, his title to the land, free from the dominant servitude of the Government to take it in the improvement of navigable streams; second, that it was taken, recognizing his title thereto, as a part of the general plan of improvement contemplated under such circumstances as indicate an intention to, and a recognition of liability to pay therefor, or, as said in the Lynah case, p. 446: “The proceeding must be regarded as an actual appropriation of the land, including the possession and the fee and, when the amount awarded as compensation is paid, the title, the fee and whatever rights may attach thereto pass to the Government which becomes henceforth the full owner.”
The batture or sand bank was in the bed of the river. The bed of a navigable stream, and the soil thereunder, irrespective of riparian ownership of the fee thereof, is so owned and possessed subject to the dominani right of the United States to improve the stream in aid of navigation, and so long as the United States, in pursuit of any scheme of improvement, confines its authorized work to the natural bed of the river, and all it accomplishes is within the bed, and the same does not extend outside thereof, or result in overflow or injury to adjoining lands, what is done is not open to question by a riparian owner. His rights are subordinated to those of the Government, and as said by Mr. Justice Lurton in Lewis Blue Point Oyster Co. v. Briggs, 229 U. S. 82, 87: “ If the public right of navigation is the dominant right and if, as must be the case, the title of the owner of the bed of navigable waters holds subject absolutely to the public right of navigation, this dominant right must include the right to use the bed of the wáter for every purpose which is in aid of navigation. * * * By necessary implication from the dominant right of navigation, title to *29 such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands or to use them for any structure which the interest of navigation, in its judgment, may require. The plaintiff in error has, therefore, no such private property right which, when taken, or incidentally destroyed by the dredging of a deep-water channel across it entitled him to demand compensation as a condition.”
It would indeed be a novel proposition, one not until now' advanced in this jurisdiction, that under the plenary authority heretofore accorded the United States in the matter of improving navigable streams, a riparian owner of lands might assert superior title to a sand bar accumulated by accretion in the bed of a navigable stream, so as to charge a liability for its destruction or use upon the Government, upon the alleged hypothesis that the dredging was not for the express purpose of deepening the bed, but for the purpose of using the contents of the bed in improvements else-, where. As well might it be said that dredging material removed in order to deepen the channel may not be used to close a bayou or build a levee. If located in the bed of the river, the right to remove it was vested in the Government. The question of its future use in no way circumscribes the right. Scranton v. Wheeler, 57 Fed. 808; 179 U. S. 141.
If the right to dredge is conceded, it is difficult to perceive just how the right to utilize the dredged material, especially if it is used for improvement of navigation, converts the transaction into a taking of private property. If the concern of the commission was to keep the river within its natural banks, assuredly it might have recourse to the soil in the bottom of the channel to dispose of, shift about, use and employ, as the accomplishment of this purpose required. It was not alone the deepening of the channel with which the commission was concerned, but incidental thereto and as a part thereof was the necessity of preserving the banks intact, preventing erosion and maintaining, natural conditions. Bedford v. United States, 192 U. S. 217.
The tentative writing between the parties has no bearing-on the case. The defendant would not be liable if it had *30 been otherwise. It could not be sued upon in this court for reasons heretofore stated.
The petition will be dismissed. It is so ordered.
Graham, Judge; Hat, Judge, and Campbell, Ghief Justice, concur.
Downey, Judge, dissents.