# LEWIS BLUE POINT OYSTER CULTIVATION COMPANY *v.* BRIGGS.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 272.   Argued April 30, May 1, 1913.—Decided May 26, 1913.

The determination by the state court of the effect of grants of title to the bed of navigable waters within the State must be followed by this court.

The deepening, in the interest of navigation, of a channel across a navigable bay, the bed of which is used for oyster cultivation under grants from the State, is not a taking of the property of the lessee of the oyster beds within the meaning of the Fifth Amendment.

The public right of navigation is the dominant right in navigable waters and this includes the right to use the bed of the water for every purpose which is an aid to navigation.

Whatever power the several States had before the Union was formed over navigable waters within their respective jurisdictions has been delegated to Congress, which now has all governmental power over the subject, restricted only by the limitations in the other clauses of the Constitution.

*United States* v. *Chandler-Dunbar Co.*, *ante*, p. 53, followed as to the nature of the title of an owner of the bed of navigable waters and the control of Congress thereover. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312, distinguished as not resting on proprietary rights but on estoppel.

198 N. Y. 287, affirmed.

THE facts, which involve the rights of private owners to land under navigable waters within a State used for cultivation of oysters, and whether such parties are entitled to compensation from the Government of the United States for the destruction of the oyster beds therein by reason of improvement of the channel for navigation pursuant to act of Congress, are stated in the opinion.

*Mr. Howard Taylor*, for plaintiff in error:

Plaintiff in error is clearly entitled to the relief sought.

The power of Congress to regulate commerce, and incidentally navigation, goes hand in hand with the other powers of and limitations upon the Government set forth in the Constitution, and is obviously to be exercised in conformity to such limitations. *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 336; *United States* v. *Lynah*, 188 U. S. 445, 471.

The right of compensation to the owner of private property when it has been taken for public use, is a fundamental inherent right which exists even independently of the National or state constitutions, and has merely been declared therein. *Sinnickson* v. *Johnson*, 17 N. J. L. (2 Harr.) 129, 145.

There has been laid down no exception to this right because the property taken was growing oysters. The growing of oysters is a legitimate industry. The oysters here in question were being grown upon the lands of the plaintiff, and, of course, upon the only kind of lands (submerged ones), where the product of that industry could grow. See *Brown* v. *United States*, 81 Fed. Rep. 55; *Richardson* v. *United States*, 100 Fed. Rep. 714, both decided by Judge Simonton, and holding that the owners of the oyster beds might permit the entry of the Government's officials and recover compensation in a direct proceeding. In the case at bar plaintiff simply seeks to enjoin this entry until the Government takes proceedings for the condemnation of his property. In this alternate procedure plaintiff in error is clearly within its rights. *Phila. Co.* v. *Stimson*, 223 U. S. 605, 620; Pomeroy's Eq. Jurisp., Vol. V, §§ 493, 499.

Plaintiff's constitutional right is plain; the call for its exercise in this instance is equally plain; and the correct remedy has been pursued.

The courts below have misconceived the decisions of the Federal courts, as those cited afford no basis for the adjudication. See opinion of Atty. Gen. Bonaparte,

Oct. 25, 1907, 26 Ops. 441, citing cases *supra* and *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; see also 27 Ops. Atty. Gens. 311.

*Scranton* v. *Wheeler*, 179 U. S. 141, was erroneously applied to this case. See dissenting opinion in 179 U. S. 169; *Yates* v. *Milwaukee*, 10 Wall. 497, 507. *Chic., B. & Q. Ry. Co.* v. *Drainage Commissioners*, 200 U. S. 561; *West Chic. Street R. R. Co.* v. *Chicago*, 201 U. S. 506; *Union Bridge Co.* v. *United States*, 204 U. S. 364, are not in point. See *Avery* v. *Fox*, 1 Abb. U. S. 246, *S. C.*, Fed. Cas. No. 674; *Stockton* v. *Balt. & N. Y. R. R. Co.*, 32 Fed. Rep. 9; *Hawkins Point Light House Case*, 39 Fed. Rep. 77.

There is in the Great South Bay this great and perfectly legitimate industry of the development of oysters. The Bluepoint oyster is known from one end of this country to the other.

The digging of a channel which destroys "a large number of oysters on the lands aforesaid" and "cuts diagonally through the premises described in said leases" is fundamentally different from the action of the Government in erecting a lighthouse or putting down a pier into the sea or the river.

The Government, in such an instance as this, aids navigation in the sense that it makes a water way where nature did not make a water way; it makes a place for vessels of deep draft where nature made a place for skiffs. In so doing it undertakes a public use. But in so doing, it takes private property, which is just as much private property, and just as much private property taken, as any other kind of property in this country.

The people whose property is being taken in the course of that work should be paid for it.

*Mr. Assistant Attorney General Denison*, with whom *Mr. Louis G. Bissell* was on the brief, for the United States.

MR. JUSTICE LURTON delivered the opinion of the court.

This was an action to restrain the defendant in error from dredging upon certain lands under the waters of Great South Bay in the State of New York. The defense was that the lands upon which he was engaged in dredging were under the navigable waters of the bay, which was a navigable area of the sea, over which enrolled and registered vessels passed in interstate commerce; that Congress had provided for the dredging of a channel some 2,000 feet long and 200 feet wide across said Bay, and that defendant was engaged as a contractor with the United States in dredging the channel so authorized. The plaintiff in error, plaintiff below, averred that this channel would pass diagonally across submerged land in said bay which it held as lessee under the owner of the fee in the bed of the bay. The land so held under lease had been planted with oysters and had been long used for the cultivation of that variety of oyster known as the "Blue Point." The claim was that the dredging of such a channel would destroy the oysters of the plaintiff, not only along the line of excavation, but for some distance on either side, and greatly impair the value of his leasehold for oyster cultivation.

The New York Court of Appeals held that the title of every owner of lands beneath navigable waters was a qualified one, and subject to the right of Congress to deepen the channel in the interest of navigation, and such a "taking" was not a "taking" of private property for which compensation could be required. The judgment of the courts below discharging the injunction and dismissing the action was therefore affirmed.

The case comes here upon the claim that the dredging of such a channel, although in the interest of navigation, is a taking of private property without just compensation, forbidden by the Fifth Amendment to the Constitution of the United States.

The foundation of the title to a large portion of the soil lying under the water of Great South Bay is found in certain royal patents made when the State of New York was a colonial dependency of Great Britain. Through the patents referred to and certain mesne conveyances, the lessors of the oyster company have been adjudged to be seized of the legal title to a large part of the land which lies at the bottom of that bay. That determination of title under the local law is not complained of, and must of course, be accepted and followed by this court. The single question, therefore, is, whether the deepening of the channel across the bay in the interest of navigation with the incidental consequence to the oyster plantation of the lessee company is a taking of private property which may be enjoined unless provision for compensation has been made.

The cultivation of oysters upon the beds of the shallow waters of bays and inlets of the sea and of the rivers affected by the tides, has become an industry of great importance. In many localities the business is regulated by the laws of the States in which such waters are situated, and the beds of such waters are parcelled out among those owning the bottom or holding licenses from the State, and marked off by stakes indicating the boundaries of each cultivator. The contention is that whether title to such an area at the bottom of navigable salt waters comes from the State, or, as in the case here, from royal patents antedating the State's right, such actual interest is thereby acquired that when such area so planted and cultivated is invaded for the purpose of deepening the water in aid of navigation, private property is taken. For this, counsel cite the cases of *Brown* v. *United States*, 81 Fed. Rep. 55, decided by Circuit Court Judge Simonton; and *Richardson* v. *United States*, 100 Fed. Rep. 714, also decided by the same eminent judge. They also cite and rely upon *Monongahela Navigation Co.* v. *United States*,

148 U. S. 312. In the *Brown Case,* Judge Simonton, while recognizing that the navigable waters of the United States were within the jurisdiction of the United States which has control over their improvement for navigation, was of opinion, that so long as the owner of the bed of such bodies of water did not use it "for the erection of structures impeding or obstructing navigation," his ownership of the bottom and his right to put it to such use as did not obstruct navigation, was a property right, which could not be destroyed or taken without compensation. From these considerations he held (p. 57) that "when the Government, for the purpose of adding to the navigability of a stream, changes its natural channel, and, in doing so, occupies and assumes exclusive possession of the land of a citizen, it takes private property." In that case the Government had, in the exercise of its power of improving navigation, erected a dyke on the oyster beds of the complainant in the shallow salt water of York River, for the purpose of directing the current of the river and maintaining the channel. The effect of this was to destroy the property of the owner or lessee of the bed of the river at that point for the purpose to which it was devoted. This the learned judge ruled was a "taking" which was not lawful without compensation.

That case and the later one cited fail to recognize the qualified nature of the title which a private owner may have in the lands lying under navigable waters. If the public right of navigation is the dominant right and if, as must be the case, the title of the owner of the bed of navigable waters holds subject absolutely to the public right of navigation, this dominant right must include the right to use the bed of the water for every purpose which is in aid of navigation. This right to control, improve and regulate the navigation of such waters is one of the greatest of the powers delegated to the United States by the power to regulate commerce. Whatever power the several

States had before the Union was formed, over the navigable waters within their several jurisdictions, has been delegated to the Congress, in which, therefore, is centered all of the governmental power over the subject, restricted only by such limitations as are found in other clauses of the Constitution.

By necessary implication from the dominant right of navigation, title to such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands or to use them for any structure which the interest of navigation, in its judgment, may require. The plaintiff in error has, therefore, no such private property right which, when taken, or incidentally destroyed by the dredging of a deep water channel across it, entitles him to demand compensation as a condition.

In the *Hawkins Point Light House Case*, 39 Fed. Rep. 77, it was held that the occupation of the lands under navigable waters for the purpose of erecting a light house thereon in aid of navigation was not a taking of private property requiring compensation, the owner's title being, by necessary implication, subject to the use which the United States had made of it. In *Scranton* v. *Wheeler*, 57 Fed. Rep. 803, 813, 814, it appeared that the United States had erected a long dyke or pier upon the submerged lands of a riparian owner on the St. Marys River, Michigan, cutting off his access to deep water. It was held that his title was subject to whatever use the Government found appropriate for improving navigation.

The case referred to had been removed from a state court to the Circuit Court of the United States. Upon a writ of error to this court, the case was held to have been improperly removed and was remanded, with direction to remand to the court from which it had been removed. It was there heard and upon review by the Supreme Court of Michigan, the plaintiff's action was dismissed upon the same ground upon which the Circuit

Court had dismissed it. The case then came to this court upon a writ of error to the Michigan court, and the judgment was affirmed. Concerning the nature of the title of a riparian owner to submerged lands over which his boundary extends, this court said:

"Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on a public navigable water, his title is not as full and complete as his title to fast land which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute. disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation." *Scranton* v. *Wheeler,* 179 U. S. 141, 163.

The whole subject of the nature and character of the interest of the owner of such a title and the scope of the control of the Congress over navigable rivers has been fully considered by this court in *United States* v. *Chandler-Dunbar Water Power Co.,* just decided, *ante,* p. 53, where the decision in *Scranton* v. *Wheeler* was fully affirmed.

The case of the *Monongahela Navigation Company* v. *United States,* 148 U. S. 312, 335, has been cited as a case in which the owners of a lock and canal and a franchise to take tolls were awarded compensation not only for the tangible property taken but for the value to the company of the State's franchise to take tolls. That case really rests upon estoppel. The lock and dam had been constructed "at the instance and implied invitation of Congress." After stating the action of Congress, the court said:

"This is something more than the mere recognition of an existing fact; it is an invitation to the company to do the work; and when in pursuance of that invitation, and under authority given by the State of Pennsylvania,

the company has constructed the lock and dam, it does not lie in the power of the State or the United States to say that such lock and dam are an obstruction and wrongfully there, or that the right to compensation for the use of this improvement by the public does not belong to its owner, the Navigation Company."

Compare *Union Bridge Co.* v. *United States*, 204 U. S. 364.

The conclusion we reach, is that the court below did not err in dismissing the action of the plaintiff in error, and the judgment is accordingly

*Affirmed.*