HIGGINS, Justice.
 

 The plaintiff, as the fee-simple owner of twelve acres of land located in St. Tammany Parish, Louisiana, instituted this action against the City of Bogalusa, Washington Parish, Louisiana, to recover the sum of $3,500 for damages to said property alleged to have resulted from the dredging of the Pearl River by the United States government, upon the request of the defendant, the work having been performed in such a way as to “isolate” plaintiff’s home and land and destroy the ingress and egress thereto.
 

 The defendant filed (1) an exception of no right of action on the ground that it only guaranteed the United States government against loss through damage to prop
 
 *1100
 
 erty in connection with the project and, therefore, plaintiff should first assert her claim against the federal government; and (2) an exception of no cause of action on the ground that the petition failed to allege that the plaintiff’s property was taken or that she had any contract right or vested interest in the right of way over or through any of the lands taken or the property actually damaged as a consequence of the improvements. Hence, it is said that under the Fifth Amendment to the Constitution of the United States and the jurisprudence of the -federal-courts, as shown by the holding in Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996, the plaintiff, was not entitled to recover, as there was no “taking” of her property within the meaning of the law.
 

 The district judge sustained the exceptions and dismissed plaintiff’s suit, and she has appealed.
 

 From the plaintiff’s petition' and the documents annexed thereto, it appears'that 'beginning in 1880 the federal government, under annual appropriations by Congress, began improving' the Pearl River, a navigable stream, between its mouth and Jackson, Mississippi, by dredging operations. This work was discontinued in 1922. Later, the City of Bogalusa requested the United States to provide a navigable channel 50 to 100 feet wide and 6 to 9 feet deep in the Pearl River from the Rigolets to Bogalusa. After investigation and hearing through the District Engineer of the United States Engineering Office at Mobile, Alabama, and the War Department, and upon their recommendations, Congress authorized (in the Rivers and Harbors Act, approved August 30, 1935, 49 Stat. 1048), the improvement of -the Pearl River so as to provide a 6-foot channel from its mouth to a point between Poplarville, Mississippi, and Bogalusa, Louisiana, subject to the final approval of the Board of Engineers for rivers and harbors. This Board, on August 23, 1939, approved the -project for the proposed improvement -of Pearl River at an estimated cost of $3,507,000, with the stipulations:
 

 “(a) That local interests shall furnish, free of cost to the United States, the land required for the dams, locks, canal and appurtenances and all flowage and dumpage easements needed for initial construction and subsequent maintenance of the improvement and shall assume full responsibility for
 
 all
 
 property
 
 damage
 
 incident to construction and maintenance of the canal.
 

 “(b) That local interests shall give assurances satisfactory to the Secretary of War that .they will provide, free of cost to the United States, the ferries and bridges required for land traffic across the lateral and terminal canals, and construct a terminal canal from Pearl River to and including a terminal basin at Bogalusa with suitable terminal facilities open to all on equal terms.”
 

 In compliance with the War Department’s requirements for local co-operation, the City of Bogalusa adopted a series of resolutions on July 19, 1938, one of which “* * *■ guaranteed to the Secretary of War of the United States that the City of Bogalusa will assume full responsibility for all damages to property incident to the
 
 *1102
 
 construction of the canal, including any and all claims that may result from the isolation of property and will, and does, assume full responsibility for all property damage incident to the construction and maintenance of the improvements.” By this resolution, the City of Bogalusa further “* * * guarantees to hold and save harmless the United States of America, and its agents, from all claims for damages that may or might result from the construction and maintenance of the improvement aforesaid.”
 

 By Act of Congress, approved June 29, 1906, Chapter 3628, 34 Stat. 632, 33 U.S. C.A. § 592, it is provided that when a corporation shall undertake to secure any land or easement in connection with a work of river and harbor improvement, duly authorized by Congress, for the purpose of conveying the 'same to the United States free of cost, and shall be unable for any reason to obtain the same by purchase, the Secretary of War may, in his discretion, cause proceedings to be instituted in the name of the United States for the acquirement by condemnation of the lands or easements. After the City of Bogalusa found it impossible to purchase the necessary right of way for the improvement of Pearl River, the Commission Council of the City of Bogalusa on July 19, 1938, adopted a resolution requesting the Secretary of War to institute the necessary condemnation proceedings. Accordingly, the United States filed three condemnation suits in the United States District Court for the Eastern District of Louisiana, New Orleans Division, the plaintiff’s land being affected by suit No. 103. As the plaintiff was not made a party thereto, she intervened, alleging damage to her land as a result of the construction of the canal, which constituted a part of the Pearl River navigation improvement. In her petition of intervention in the federal court, as well as in her petition in the state court, plaintiff alleged that her property was not touched and that no part of it was taken, and based her claim for damages on the allegation that she was isolated or cut off between the canal and the present channel of the Pearl River. She voluntarily withdrew the petition of intervention before the United States could either plead or answer thereto and instituted the present suit in the Twenty-Second Judicial District Court for the Parish of Washington, State of Louisiana, against the City' of Bogalusa only, claiming damages on substantially the same allegations as those contained in her petition of intervention.
 

 Plaintiff predicates her right to sue the City of Bogalusa on the resolutions of Jtily 19, 1938, contending (1) that since the defendant requested the United States government' to institute the condemnation proceedings, the government was acting as’ the city’s agent and, therefore, the principal is liable for the damage caused by the act of its agent and (2) that the city in another resolution of July 19, 1938, assumed full responsibility for all damages to property incidental to the construction of the canal that might result from isolation of property. We shall discuss these issues in the above order:
 

 Project document No. 408 shows that-the river improvement was for navigation.
 
 *1104
 
 purposes exclusively under the commerce powers granted to the federal government ■by the United States Constitution and that the project was solely and exclusively within the jurisdiction and control of the United States government. The City of Bogalusa because of local interests, requested the United States to exercise its constitutional power over navigable streams in the interest of interstate commerce by re-opening the Pearl River for navigation. Before the federal government agreed to expend public money for such purpose and to exercise its constitutional sovereign right, including the probable necessity for the exercise of the right of eminent domain with respect to such project, an extensive investigation was made. In line with congressional authority, when the report showed the proposed project to be feasible, it was undertaken with the provision that the local interest involved should meet certain requirements, i. e., that the necessary lands required should be furnished by the local interests free of costs to the federal government and that the local interests would assume full responsibility or save the government harmless for all property damages incident to the construction and maintenance of the canal. The City of Bogalusa acceded to these terms.
 

 While plaintiff’s petition does state that the .government was acting' as the agent for the City of Bogalusa because of its request to institute the expropriation proceedings, the documents annexed to her petition and which necessarily control the allegations therein contained, show that the United States government was acting under its own constitutional rights in the exercise of the power belonging exclusively to it in improving a navigable river and that the dredging of the canal was incidental thereto.
 

 If plaintiff has suffered damage, then the active and only agency causing the damage is the United States government. The work is solely under the direction and control of the United States government and title to the lands to be acquired, whether by purchase or condemnation, shall vest in the United States. The cost of the construction of the canal, locks, and dams is being paid by the United States. The supervision, operation, and maintenance of the finished project vests solely in the United States. The City of Bogalusa stands only in the position of being willing to pay whatever expenses or assessment the United States might incur in connection with the acquisition of the necessary right of way and such property damage as the owner might recover against the United States. • Under the circumstances, it is our view that the United States government was not acting as the agent of the City of Bogalusa.
 

 Counsel for plaintiff argue that, as the petition alleges that their client’s property was damaged, and the City of Bogalusa, by resolutions, assumed responsibility therefor, she was entitled to bring a direct action against the city to recover therefor under the laws of this state. The defendant contends that, as the federal government actually instituted the condemnation proceedings and installed the improvements which the plaintiff claims caused damage to her property, the government is pri
 
 *1106
 
 marily responsible, and the city secondarily liable only as a guarantor, as it simply undertook to guarantee the government against loss caused by damage to property in connection with the project.
 

 From a study of the documents annexed to the plaintiff’s petition, which are controlling herein, the sole duty and responsibility of the City of Bogalusa- in the premises is to pay whatever costs and damages that may be assessed against the United States in the prosecution of the work. As a condition precedent to the institution of the condemnation suits, the United States required the City of Bogalusa to deposit in the registry of the federal court such monies as were estimated by the government to be necessary to pay condemnation awards in the suits, i. e., to pay such' damages as may be assessed against the United States. The city now has on deposit in' the pending suits approximately $33,000 for this purpose. It could be directly liable by virtue of its commitment only to the United States government in connection with the project, under its guarantee, in the event the United States government is cast for damages, which may not be covered by the money deposited in the condemnation actions. Wiemann v. Mainegra, 112 La. 305-308, 36 So. 358 and R.C.C. Art. 3066.
 

 The pleadings and the documents annexed thereto show that there is no in solido obligation on the part of the city. R.C.C. Art. 3045.
 

 There is nothing in the resolutions of July 19, 1938, which would justify this court in holding that the City of Bogalusa had granted to the plaintiff as a landowner a direct right of action to recover damages said to have resulted from the “isolation” of her property on account of the condemnation proceedings and the improvements undertaken by the United States government. It is our opinion that the exception of no right of action is well founded and that the plaintiff’s suit was properly dismissed. This conclusion makes it unnecessary for us to consider the exception of no cause of action.
 

 For the reasons assigned, the judgment appealed from is affirmed at appellant’s costs.