170 So.2d 910 (1965)
Joseph VULJAN
v.
The BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS.
No. 1675.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1965.
Rehearing Denied February 8, 1965.
Writ Refused March 29, 1965.
Chehardy & Werhan, John C. Werhan, New Orleans, for plaintiff-appellant.
Cyrus C. Guidry, New Orleans, for defendant-appellee.
Before REGAN, YARRUT and TURNER, JJ.
YARRUT, Judge.
Plaintiff appeals from the judgment of the district court maintaining Defendant's exception of no cause of action and the dismissal of his suit.
Plaintiff alleges he is the owner of a water bottom lease from the Louisiana *911 Wild Life & Fisheries Division of Louisiana, for the cultivation of oysters, located within one mile of the deep-water channel of the Mississippi River-Gulf Outlet, constructed by the U. S. Corps of Engineers pursuant to Public Law No. 455, 84th Congress of the United States, 70 Stat. 65.
This law, as a condition precedent, required that the State of Louisiana and/or its local agency, must first agree to furnish all lands, servitudes, and rights-of-way incident to the construction, maintenance and operation of the project, and to indemnify and hold harmless the United States against any and all claims that might result from the construction of the channel. Accordingly, the Governor of Louisiana designated Defendant as the state agency to acquire and furnish to the United States all lands, servitudes and rights-of-way necessary for the construction of the channel, and what may be necessary for future needs, free of any cost to the United States.
The dredging of the channel and construction of necessary dikes by the U. S. Corps of Engineers allegedly affected the flow of water in the area, causing silt to settle upon and destroy Plaintiff's oyster bed, thus rendering it unfit for the continued commercial production of oysters.
Plaintiff contends: (1) That Defendant, as the designated agent of the State of Louisiana did, in effect, take his property within the meaning of La.Const.1921, Art. 1, Sec. 2, LSA, and the damage was due to the work of the U. S. Corps of Engineers; and, (2) that Defendant, as such agent, under its indemnities and hold-harmless agreement with the United States, is liable for all claims, of any nature, resulting from the construction of the channel.
Defendant's exception of no cause of action is two-fold:
(1) Since no part of Plaintiff's property was actually expropriated by it, he suffered no damage recoverable from it;
(2) Defendant is answerable, if at all, only to the United States as its surety, not directly to Plaintiff or to any third party subsequently damaged as a result of the negligence vel non of the United States.
The case of Marie v. Police Jury of Parish of Terrebonne, La.App., 161 So.2d 407, supports Defendant. In that case the dredging of the canal, which caused silt to settle over the water bottoms and destroy the commercial usefulness of the oyster beds of plaintiff, was by a state agency executing a state public improvement project; while here the project involved is federal, and solely under the jurisdiction and control of the United States.
In the case of Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083 (1913), the Court held that the construction of a navigation improvement project across a navigable bay, which destroyed the usefulness of the bed for oyster cultivation under grants from the State, was not a taking of property within the meaning of the Fifth Amendment, since the public right of navigation was the dominant right in navigable waters, including the right to use the water bed for every purpose needed in aid of navigation. The Court said:
"By necessary implication from the dominant right of navigation, title to such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands, or to use them for any structure which the interest of navigation, in its judgment, may require. The plaintiff in error has, therefore, no such private property right which, when taken, or incidentally destroyed by the dredging of a deep water channel across it, entitles him to demand compensation as a condition." 229 U.S. at 88, 33 S.Ct. at 680.
Here, the damage to Plaintiff's oyster beds, even if recoverable, did not result from their taking by the State, but brought about by ensuing construction of the Mississippi *912 River-Gulf Outlet authorized by Congress, over which the United States alone had and has exclusive jurisdiction and control.
Plaintiff further contends that the project was a joint, cooperative federal-state project; and, since Defendant agreed to use its inherent power of eminent domain to save the United States harmless against any and all claims arising out of the construction, maintenance and operation of the outlet, Plaintiff must look to the State for just and adequate compensation, citing Griggs v. County of Allegheny, Pennsylvania, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed. 2d 585 (1962); General Box Co. v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 (1956); Danziger v. United States, 93 F.Supp. 70 (E.D.La., 1950).
These cases are not authority for the proposition that a suit may be filed against the State under the provision of Article 1, Section 2, of the State Constitution, merely because the State agreed to acquire and furnish to the United States such lands required for a purely federal project. To the contrary, these cases are in accord with Cooper v. City of Bogalusa (cited infra) that, if the public improvement is a federal project, the State cannot be sued directly merely because the State contributed to the cost of the project. The test, therefore, is whether or not the project is State or federal.
In the case of Griggs v. County of Allegheny, Pennsylvania, supra, the State, through its County of Allegheny, built an airport as a State public project. Under the National Airport plan enacted by Congress, the United States agreed to contribute 50 to 75% of the cost of the project. Plaintiff sued the county for damages to his private property caused by the noise of planes flying at low altitude in landing and taking off from the airport contending that, since the federal government contributed to the cost of the airport, it was the "taker" of plaintiff's property, and responsible for the damage. The Supreme Court held that the defendant (County of Allegheny), as the promoter, owner, and lessor of the airport, alone took the air easement in the constitutional sense, and that the federal government took nothing.
The Mississippi River-Gulf Outlet is a federal project. The federal government alone constructed it after deciding where the project would be built, what spoil disposal areas it would need, their direction and width, and what land, navigation servitudes or easements were required. The State took nothing.
In General Box Co. v. United States, supra, suit was filed against the United States for the value of timber on the batture destroyed by it in constructing a levee under the U. S. Flood Control Act of 1928, which required the State to furnish the right-of-way for the levee, so built, to be taken over and maintained by the State of Louisiana. The State then appropriated the batture pursuant to the public servitude created by LSA-C.C. Article 665. The Supreme Court held that the Fifth Amendment of the U. S. Constitution was not applicable as there was no taking or condemnation by the United States; that the State alone was the "taker," the United States merely contributed to the cost of building the levee for the State.
The case of Danziger v. United States, supra, involved an appropriation by a Levee Board of Louisiana of property for the construction of a levee setback, which was constructed by the Levee Board under LSA-C.C. Article 665, referred to above. Title to the servitudes remained vested in the Levee Board, not transferred to the United States, which only constructed the levee at its expense as an aid to the State; the Levee Board being required to maintain the levee after construction by the federal government. The Court held that since the federal government merely contributed to the State project by constructing the levee at its expense, but took no title or servitudes thereon, the project was not federal, but wholly that of the State, and *913 that the federal government was not responsible for the value of the land taken by the State.
In Cooper v. City of Bogalusa, 195 La. 1097, 198 So. 510, the facts and circumstances are substantially identical to the case at bar. There our Supreme Court held that the property owner did not have a right of action to bring suit directly against the city, the local indemnifying authority, for damage caused by the dredging and improvement of the Pearl River; that the navigation project was solely under the control of the United States Government under an Act of Congress which authorized the improvement of Pearl River to provide a 6-foot channel, subject to the approval of a U. S. Board of Engineers which approved the project with one of the stipulations being as follows:
"That local interests shall furnish, free of cost to the United States, the land required for the dams, locks, canal and appurtenances and all flowage and dumpage easements needed for initial construction and subsequent maintenance of the improvement and shall assume full responsibility for all property damage incident to construction and maintenance of the canal."
The above cases clearly hold that the test whether an action will lie under the provision of the State Constitution or the Fifth Amendment of the United States Constitution, depends entirely upon whether the public project is state or federal, and which government was acting under its power of eminent domain in carrying out the public project.
Regarding the second contention that the State and its agent (Defendant) are bound by their covenant to hold the United States harmless, the Supreme Court in Cooper v. City of Bogalusa held that the assurance to save the United States harmless was in the nature of an agreement of indemnification and, as such, was distinguishable from a contract of suretyship, defined in LSA-C.C. Article 3035, and did not create a cause of action in Plaintiff, a third person, to sue Defendant for damages to his property resulting from the construction of the project. Accordingly, we must conclude that, under the said "save harmless" assurance, Defendant stands only in the position of agreeing to reimburse the United States the amount which an owner might by judicial determination first recover in damages in an action against the United States.
Whether Plaintiff has a cause of action and against whom, is not for us to say. All we decide here is that Plaintiff has no cause of action against the State of Louisiana or Defendant, its agent.
The judgment of the district court is affirmed. Plaintiff-Appellant to pay all costs in both courts.
Affirmed.